# EXHIBIT D

Chase T. Tajima (SBN 304063)
*chase@tajimallp.com*
Patrick Y. Yoo (SBN 302282)
*patrick@tajimallp.com*
**TAJIMA LLP**
4605 Lankershim Blvd., Suite 540
Los Angeles, California 91602
Telephone: (323) 487-1101

Attorneys for Plaintiff and Cross-Defendant
M.M.

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/21/2026 6:27 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Lopez, Deputy Clerk

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| M.M., an individual, | Case No. 24STCV17698 |
| Plaintiff, | |
| v. | [Assigned to Hon. Doreen Boxer, in Dept. 311, for All Purposes] |
| HAO ZHENG, an individual; HOLLYWOOD AND VINE RESIDENCES ASSOCIATION; and DOES 1-30. | |
| Defendants. | **PLAINTIFF/CROSS-DEFENDANT M.M.'S TRIAL BRIEF** |
| HAO ZHENG, | **Final Status Conference** |
| Cross-Complainant, | Date: May 29, 2026 |
| v. | Time: 9:30 a.m. |
| M.M.; and ROES 1-50, . | Dept: 311 |
| Cross-Defendants. | Complaint Filed: July 16, 2024 |
| | Cross-Complaint Filed: September 18, 2024 |
| | Final Status Conference: May 29, 2026 |
| | Trial Date: June 9, 2026 |

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................................1

II.     PROCEDURAL POSTURE AND NARROW ISSUES FOR TRIAL.......................................2

III.    FACTUAL BACKGROUND ...................................................................................................3

IV.     LEGAL EFFECT OF THE DEEMED ADMISSIONS .............................................................6

V.      THE CLAIMS AGAINST ZHENG ARE ESTABLISHED BY DEEMED ADMISSIONS .........6

      A.      First Cause of Action — Retaliatory Eviction...............................................................6

      B.      Second Cause of Action — Unlawful Self-Help Eviction...............................................7

      C.      Third Cause of Action — Breach of the Covenant of Quiet Enjoyment ..........................7

      D.      Fourth Cause of Action — Trespass ............................................................................8

      E.      Fifth Cause of Action — Conversion of Personal Property in the Condo..........................8

      F.      Sixth Cause of Action — Conversion of Range Rover ...................................................9

      G.      Seventh Cause of Action — Invasion of Privacy ..........................................................9

      H.      Eighth Cause of Action — Intentional Infliction of Emotional Distress.........................10

      I.      Ninth Cause of Action — Claim and Delivery of Personal Property ..............................10

      J.      Tenth Cause of Action — Breach of Contract re Childcare ..........................................11

      K.      Eleventh Cause of Action — Promissory Estoppel ......................................................11

      L.      Twelfth Cause of Action — Quantum Meruit .............................................................12

      M.      Thirteenth Cause of Action — Common Count: Goods and Services Rendered ..............12

      N.      Fourteenth Cause of Action — Unfair Competition.....................................................12

      O.      Fifteenth Cause of Action — Negligence ..................................................................13

VI.     DAMAGES ESTABLISHED BY THE DEEMED ADMISSIONS ...........................................13

      A.      Economic Damages ................................................................................................13

      B.      Noneconomic Damages ...........................................................................................14

      C.      Prejudgment Interest ..............................................................................................14

      D.      Punitive Damages ..................................................................................................15

VII.    JUDGMENT SHOULD BE ENTERED FOR M.M. ON ZHENG'S CROSS-COMPLAINT ......................................................................................................................17

VIII.   CONCLUSION.....................................................................................................................17

TAJIMA LLP
Los Angeles

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Murakami*
(1991) 54 Cal.3d 105 ..............................................................................................21

*Andrews v. Mobile Aire Estates*
(2005) 125 Cal.App.4th 578 ....................................................................................12

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
(1999) 20 Cal.4th 163 ..............................................................................................17

*Farmers Insurance Exchange v. Zerin*
(1997) 53 Cal.App.4th 445 ......................................................................................17

*First & C Corp. v. Wenckle*
(1967) 253 Cal.App.2d 719 ......................................................................................11

*Hughes v. Pair*
(2009) 46 Cal.4th 1035 ............................................................................................15

*Huskinson & Brown, LLP v. Wolf*
(2004) 32 Cal.4th 453 ..............................................................................................17

*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority*
(2000) 23 Cal.4th 305 ..............................................................................................16

*Ladd v. County of San Mateo*
(1996) 12 Cal.4th 913 ..............................................................................................18

*Lee v. Hanley*
(2015) 61 Cal.4th 1225 ............................................................................................13

*Oasis West Realty, LLC v. Goldman*
(2011) 51 Cal.4th 811 ..............................................................................................16

*Ralphs Grocery Co. v. Victory Consultants, Inc.*
(2017) 17 Cal.App.5th 245 ......................................................................................13

*Roby v. McKesson Corp.*
(2009) 47 Cal.4th 686 ..............................................................................................21

*Shulman v. Group W Productions, Inc.*
(1998) 18 Cal.4th 200 ..............................................................................................14

*Simon v. San Paolo U.S. Holding Co., Inc.*
(2005) 35 Cal.4th 1159 ............................................................................................21

*Winslett v. 1811 27th Ave., LLC*
(2018) 26 Cal.App.5th 239 ......................................................................................11

**Statutes**

Bus. & Prof. Code, § 17200 ............................................................................................17

Civ. Code, § 1708.8 ........................................................................................................14

Civ. Code, § 1927 ....................................................................................................................12

Civ. Code, § 1942.5 .................................................................................................................11

Civ. Code, § 3287 ....................................................................................................................20

Civ. Code, § 3289 ....................................................................................................................20

Civ. Code, § 3294 ....................................................................................................................20

Civ. Code, § 789.3 ...................................................................................................................12

Code Civ. Proc., § 1159 ..........................................................................................................12

Code Civ. Proc., § 1160 ..........................................................................................................12

Code Civ. Proc., § 2033.410 ...................................................................................................18

Code Civ. Proc., § 512.010 .....................................................................................................15

## I.    INTRODUCTION

Plaintiff **M.M.** is **Matthew J. Mimiaga, ScD, MPH, MA**, a respected UCLA professor and public-health scholar. This case is about holding Defendant Hao Zheng accountable for his admitted misconduct that invaded Plaintiff's privacy, displaced him from his home, deprived him of property, and left him uncompensated for extensive childcare services. *A critical fact sits at the center of the case: Zheng installed a hidden spy camera in the master bedroom of the Condo to watch and record Plaintiff while he was sleeping and during private moments, without Plaintiff's knowledge or consent*. Plaintiff is the sole witness Plaintiff intends to call for its case.

Defendant **Hao Zheng** is, by contrast, a wealthy individual with significant assets around the world, including in Portugal and China. Zheng's wealth matters here because punitive damages must be sufficient to punish and deter. Zheng used his financial power and control over the Condo, vehicle, and access to resources to retaliate against Plaintiff after Plaintiff ended the parties' romantic relationship.

*Defendant Zheng has failed to confer with Plaintiff on trial preparation. Therefore, Plaintiff respectfully requests that the Court set an OSC as to why the Court should not terminate Defendant's answer and cross claims and enter judgment on all issues in Plaintiff's favor*.

Should a trial proceed, it is only a narrow one. Defendant Hollywood and Vine Residences Association has settled out, leaving Hao Zheng as the only remaining defendant. The Court need not conduct a full liability trial against Zheng because Plaintiff's Requests for Admission, Set One ("RFAs"), Nos. 1-73, have been deemed admitted. Those admissions establish the factual predicates, liability, and damages for the operative causes of action asserted against Zheng, and they also establish that Zheng's conduct was oppressive, fraudulent, and malicious within the meaning of Civil Code section 3294. *The only meaningful remaining issue for trial is the amount of punitive damages*. Zheng has admitted that his conduct was oppressive, fraudulent, and malicious within the meaning of Civil Code section 3294; that his conduct warrants punitive damages; and that his conduct caused Plaintiff emotional-distress damages in the amount of $1 million. (Trial Exh. 1, RFA Nos. 70, 71, 73.)

Zheng's litigation misconduct reinforces the need for a punitive award. The Court has already sanctioned Zheng for spoliation of the Condo evidence after discovery was pending, ordered monetary sanctions, and imposed an evidentiary sanction/adverse inference that Zheng rendered evidence

unavailable because it was unfavorable to him. The Court also issued a sanction against Zheng in favor of Defendant Association. Despite his extreme wealth, Zheng has not paid any of those sanctions. The deemed admissions also conclusively disprove the factual predicates of Zheng's Cross-Complaint, leaving no triable issues on Zheng's affirmative claims against M.M. (*Id.*, RFA Nos. 65-69.)

Accordingly, M.M. asks the Court to: (1) enter judgment for M.M. on the Complaint; (2) dismiss Zheng's Cross-Complaint and enter judgment for M.M. as Cross-Defendant; and (4) limit any remaining trial proceedings, if any, to the amount of punitive damages and any judgment mechanics, including prejudgment interest through entry of judgment. However, a terminating sanction is most appropriate. If Zheng will not comply with Court rules and orders, he should not be permitted to put on a case.

## II.    PROCEDURAL POSTURE AND NARROW ISSUES FOR TRIAL

Plaintiff filed the Verified Complaint on July 16, 2024 against Hao Zheng and Hollywood and Vine Residences Association. The complaint arises from Zheng's hidden-camera invasion of privacy, retaliatory and unlawful self-help eviction, breach of the covenant of quiet enjoyment, trespass, conversion of Plaintiff's personal property, conversion of the Range Rover, failure to compensate Plaintiff for childcare services and expenses, unfair competition, negligence, and related claims.

Zheng answered and filed a Cross-Complaint on September 18, 2024 against M.M . As explained below, the deemed admissions conclusively disprove those allegations and there is no need for a jury trial on the cross claims.

Plaintiff served RFAs, Set One, on Zheng on November 10, 2025. After his then-counsel Noah Green of the Green Firm P.C. asserted copy-paste boilerplate objections, Plaintiff then moved to deem those RFAs admitted or, in the alternative, to compel further responses. On February 25, 2026, the Court ordered Zheng to serve further responses, without objections, by March 27, 2026, and further ordered through its Nunc Pro Tunc language that: "If further responses, without objections, are not timely served the ***Requests for Admission are deemed admitted***." (Emphasis added.) Zheng did not serve the ordered further responses. On March 30, 2026, Plaintiff filed a Notice of Non-Receipt confirming that Zheng failed to serve further responses by the Court-ordered deadline and that, ***by operation of the Court's***

*orders, the entirety of RFAs, Set One to Zheng are deemed admitted*. (Trial Exhs. 1-1b).[1]

Additionally, the Court has sanctioned Zheng for spoliation of the Condo (Unit 4K of 6250 Hollywood Blvd.) and the evidence and property therein (which would include the spy camera). As a result of selling his Condo and (presumably) disposing of the evidence and property therein, Plaintiff moved for sanctions. That motion explained that on February 28, 2025, M.M. served a demand to inspect the Condo, identify his personal property left there, and inspect the camera's location, but Zheng and his counsel concealed the sale of the Condo and delayed inspection until the Condo and relevant evidence were no longer available. On October 8, 2025, the Court granted lesser sanctions, ordered Zheng to pay **$22,900** in discovery sanctions, and imposed an evidentiary sanction finding that Zheng "rendered the evidence unavailable because it was unfavorable to him." Eight months later, on the eve of trial, Zheng has still not paid those sanctions.

Those deemed admissions and sanctions orders narrow this trial dramatically. Code of Civil Procedure section 2033.410, subdivision (a), provides that any matter admitted in response to a request for admission is "conclusively established" against the admitting party unless the court permits withdrawal or amendment. The purpose of the admission procedure is to eliminate the need for proof and narrow the issues for trial. A party may not contradict deemed admissions at trial through contrary evidence or argument. As detailed below, the deemed admitted RFAs conclusively establish Zheng's liability and damages on the Complaint, and disprove Zheng's Cross-Complaint.

### III. FACTUAL BACKGROUND

In early 2023, Zheng agreed to purchase Unit 4K at the W Residences, located at 6250 Hollywood Boulevard in Hollywood, California, for M.M. to live in while providing childcare for Zheng's son. (Trial Exh. 1, RFA No. 1.) Although M.M.'s name initially appeared on purchase paperwork as a co-owner with Zheng, M.M.'s name was later removed before the purchase was finalized. (*Id.*, RFA No. 2.) Zheng agreed that M.M. would reside in the Condo as Zheng's tenant, without monetary rental, condo association, or utility payments owed. (*Id.*, RFA No. 5.) M.M. moved into, and became a resident and tenant of, the Condo on or around May 9, 2023. (*Id.*, RFA No. 6.)

---

[1] Because the Court will not see the Exhibit Binders until the FSC, M.M. attaches to this Trial Brief, Trial Exhibit 1, M.M.'s RFAs Set 1 to Hao Zheng.

M.M. was treated as a resident of the W Residences. Zheng knew M.M. received resident-only documents and tangible items, including a resident fob granting access to the building, elevators, rooftop pool, and gym facilities, as well as a mailbox key and garage access card with parking decal. (*Id.*, RFA No. 7.) Zheng also knew the W Residences facilitated valet service for M.M.'s Range Rover, allowed M.M.'s friends and family to access his unit, received M.M.'s packages and mail, communicated with M.M. about W Residences events and news, and invited M.M. to resident-only events and privileges. (*Id.*, RFA No. 8.) Zheng knew M.M. slept in the master or primary bedroom, while Zheng's son slept in the second bedroom. (*Id.*, RFA No. 9.)

The relationship deteriorated after M.M. discovered that Zheng had installed a hidden spy camera in the master bedroom of the Condo. Zheng admitted that he installed a functioning hidden spy camera behind the air-conditioning vent in the master or primary bedroom; that the camera was connected to the internet, had 360-degree coverage, motion detection, livestream video and voice capability, and recording/storage capability; that he installed the camera without knowledge or consent; and that he recorded M.M. without knowledge or consent. (*Id.*, RFA Nos. 10-13.) Zheng also admitted that he intended to invade privacy and spy on his private moments. (*Id.*, RFA No. 14.) As a result of discovering Zheng's invasion of privacy, M.M. ended his romantic relationship with Zheng. (*Id.*, RFA No. 15.)

On or around February 15, 2024, police advised Zheng that he could not lock M.M. out of the Condo without compliance with eviction laws. (*Id.*, RFA No. 21.) LAPD officers explicitly advised Zheng that "you both have access to it [the Condo]…you both have the right to be there… He [M.M.] has just as much access " ( Trial Exh. 44a [Bodycam Time: 19:45:45 – 19:46:30]) and that even if M.M. was not the owner, "It doesn't matter. He has been here over 30 days. In California, he is a tenant and he has rights over that place. So even if he is not on the lease, the fact that he has been here over 30 days gives him rights. ***So if you don't want him to live here, you have to go through the eviction process***." (*Id.* [19:47:08 - 19:48:38] [emphasis added].) LAPD then proceeded to tell building staff that: "they are both on there so [M.M.] is allowed to come back" and "the only way to kick either one of them out is through eviction" and "he's established residency since he's been here for over 30 days…30 days receiving mail at a residence or having belongings there" establishes occupancy rights. (Trial Exh. 44c [20:19:55 – 20:20:35].)

Significantly, LAPD also expressly warned Zheng not to change locks. (Trial Exh. 44b. [20:13:28 – 20:13:35]) Nevertheless, while M.M. was away on a business trip, Zheng had the locks changed on the front door of the Condo and had the W Residences deny M.M. access to the Condo, disable his electronic fob access, and prevent him from entering the building, elevators, and common areas. (Trial Exh. 1, RFA Nos. 22-23.) Zheng also conspired with the W Residences to erase the record of M.M. as ever having been a tenant or resident. (*Id.*, RFA No. 24; *see also* Trial Exh. 45).

M.M. had $20,000 worth of personal property in the Condo. (Trial Exh. 1, RFA No. 32.) Zheng disposed of all of M.M.'s personal property left at the Condo. (*Id.*, RFA Nos. 33-34.)

Zheng also converted M.M.'s Range Rover. In or around August 26, 2023, Zheng purchased a 2020 Land Rover Range Rover, for M.M.'s use, with title in both Zheng's and M.M.'s names. (*Id.*, RFA No. 43.) Zheng told M.M. in text messages that he purchased the Range Rover for M.M., that it was M.M.'s car, and that M.M. did not need to purchase another car because the Range Rover was for him. (*Id.*, RFA No. 44.) After M.M. ended the romantic relationship, Zheng told M.M. that M.M. could keep the Range Rover. (*Id.*, RFA No. 45.) Zheng later removed M.M.'s name from title without M.M.'s knowledge or consent, by fraudulently informing the DMV that M.M. was a qualifying family member when he was not, whose signature the DMV therefore did not require for the removal of his name from title. (*Id.*, RFA Nos. 46-48.) The Range Rover had a fair market value of $62,000, and Zheng's conversion caused M.M. to incur approximately $2,200 in rental car costs and to purchase a replacement vehicle in the approximate amount of $80,000. (*Id.*, RFA Nos. 49-51.)

Finally, Zheng failed to compensate M.M. for childcare services and expenses. For approximately 16 months, M.M. provided around-the-clock childcare for Zheng's son without compensation, including feeding him, transporting him to and from school, taking him to extracurricular activities, buying necessary supplies and clothing, and paying for medical, dental, and vision insurance. (*Id.*, RFA No. 57.) Zheng agreed to compensate and reimburse M.M. for reasonable and necessary time and expenses incurred in caring for Zheng's son. (*Id.*, RFA No. 58.) Zheng admitted that the reasonable market value for M.M.'s childcare services and costs incurred totals $662,226 for childcare wages, $18,840 for food, $6,728.57 for clothing and incidentals, $3,364.28 for entertainment, $4,000 for travel, and $2,240 for health insurance. (*Id.*, RFA No. 64.)

## IV. LEGAL EFFECT OF THE DEEMED ADMISSIONS

A deemed admission is not merely evidence; it is a binding judicial admission that conclusively establishes the admitted matter. (Code Civ. Proc., § 2033.410, subd. (a).) Admissions may establish ultimate facts, elements of claims, and damages. (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 775-776 (admissions narrow triable issues "so that it will not have to be tried.").)

Here, the admissions are comprehensive. They admit: (1) the tenancy/residency relationship; (2) the hidden-camera invasion of privacy; (3) the unlawful lockout and self-help eviction by changing of locks and deactivation of access; (4) conversion and disposal of Plaintiff's personal property; (5) conversion of the Range Rover; (6) Zheng's agreement to compensate Plaintiff for childcare; (7) the reasonable market value and costs of Plaintiff's childcare services and expenses; (8) Zheng's lack of factual basis for his cross-claims; (9) Zheng's oppression, fraud, and malice; (10) Zheng's punitive-damages exposure; (11) attorney-fee liability; and (12) economic damages and (13) emotional-distress damages of $1 million. (Trial Exh. 1, RFA Nos. 1-73.)

Accordingly, Zheng should be precluded from offering testimony, documentary evidence, or argument contradicting RFAs Nos. 1-73. (*See* MIL Nos. 1, 3-4).

## V. THE CLAIMS AGAINST ZHENG ARE ESTABLISHED BY DEEMED ADMISSIONS

### A. First Cause of Action — Retaliatory Eviction

The elements of a retaliatory-eviction claim are established by Civil Code section 1942.5, which prohibits a landlord from retaliating against a tenant by increasing rent, decreasing services, causing a tenant to quit involuntarily, bringing an action to recover possession, or threatening to do so because the tenant exercised protected rights; the statute authorizes actual damages and statutory penalties for retaliatory acts. (Civ. Code, § 1942.5, subds. (c), (d), (f); *Winslett v. 1811 27th Ave., LLC* (2018) 26 Cal.App.5th 239, 247-250 (retaliatory eviction and retaliation claims).) Tenancy does not require a formal written lease or agreement, nor does it require monetary rent. (*See, e.g., Ellington v. Walsh, O'Connor & Barneson* (1940) 15 Cal.2d 673, 675 ["[t]enancies in property need not necessarily be created by valid leases" and "[o]ne may become a tenant at will or a periodic tenant under an invalid lease, or without any lease at all, by occupancy with consent."]; *see also First & C Corp. v. Wenckle* (1967) 253 Cal.App.2d 719, 723-724 [rejecting argument that possession without rent was merely a

license, holding that "the interest of [defendant] as revealed by the agreement is that of a tenancy at will," and further stating this rule applied to "[defendant]'s possession thereunder without rental charge" and confirming that defendant was "in possession, without obligation to pay rent, under, at the least, a tenancy or estate at will."].)

The same lockout conduct also implicates California's forcible entry and forcible detainer statutes, which reflect California's strong policy against self-help dispossession and protect a party in possession, including against landlord misconduct. (Code Civ. Proc., §§ 1159, 1160; *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1039-1040 (self-help lockout).

The admitted facts establish that Plaintiff resided in the Condo as Zheng's tenant, without monetary rent, association dues, or utility payments owed. (Trial Exh. 1, RFA Nos. 5-8.) Zheng admitted that police advised him that Plaintiff could not be locked out without proper notice or compliance with eviction laws, and that self-help evictions are not permitted in California. (*Id.*, RFA No. 21.) Zheng further admitted that he caused Plaintiff to be locked out while Plaintiff was away on a business trip, without proper notice or compliance with eviction laws. (*Id.*, RFA Nos. 22-24.) Zheng admitted that he is liable to Plaintiff on the first cause of action for retaliatory eviction. (*Id.*, RFA No. 25.).

**B.      Second Cause of Action — Unlawful Self-Help Eviction**

California law forbids self-help eviction. A landlord may not willfully prevent a tenant from gaining reasonable access to the property, remove outside doors or windows, change the locks, or remove the tenant's personal property except as authorized by law. (Civ. Code, § 789.3, subds. (a), (b).)

Zheng admitted that he is liable to Plaintiff on the second cause of action for unlawful self-help eviction. (Trial Exh. 1, RFA No. 26.)

**C.      Third Cause of Action — Breach of the Covenant of Quiet Enjoyment**

Civil Code section 1927 provides that a landlord covenants that the tenant shall have quiet possession of the premises during the tenancy. A breach occurs when the landlord, or someone acting under the landlord's authority, substantially interferes with the tenant's beneficial use and enjoyment of the premises. (Civ. Code, § 1927; *Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578, 588-590 (quiet enjoyment duty).)

Zheng's admissions establish the quiet-enjoyment claim on multiple independent grounds. First,

Zheng admitted that he installed a functioning hidden spy camera behind the air-conditioning vent in Plaintiff's master bedroom; that the camera was connected to the internet, had 360-degree coverage, motion detection, livestream video and voice capability, and recording/storage capability; that he installed it without Plaintiff's knowledge or consent; and that he recorded Plaintiff without Plaintiff's knowledge or consent. (Trial Exh. 1, RFA Nos. 9-14.) Zheng admitted that he is liable for breach of the covenant of quiet enjoyment because of that invasion of privacy. (*Id.*, No. 16.)

Second, Zheng admitted that he denied Plaintiff access to the Condo without notice or compliance with eviction laws and that he is liable for breach of the covenant of quiet enjoyment on that basis. (*Id.*, RFA Nos. 21-24, 27.) Third, Zheng admitted that he converted, spoliated, and disposed of Plaintiff's personal belongings left at the Condo after the lockout and that he is liable for breach of the covenant of quiet enjoyment on that basis as well. (*Id.*, RFA Nos. 32-35.)

**D.    Fourth Cause of Action — Trespass**

The elements of trespass are: (1) the plaintiff owned, leased, occupied, or controlled the property; (2) the defendant intentionally, recklessly, or negligently entered the property, caused another to enter it, or remained on it; (3) the plaintiff did not give permission; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 262 (trespass elements).)

Zheng admitted that, at the time he locked Plaintiff out of the Condo, Plaintiff had $20,000 worth of personal property in the Condo. (Trial Exh. 1, RFA No. 32.) Zheng admitted that he, or persons acting on his behalf, entered the Condo without Plaintiff's consent or notice to seize Plaintiff's personal property and belongings. (*Id.,* RFA No. 33.) Zheng admitted that he is liable to Plaintiff on the fourth cause of action for trespass into the Condo to seize Plaintiff's personal belongings and lock him out of the Condo. (*Id.,* RFA No. 36.)

**E.    Fifth Cause of Action — Conversion of Personal Property in the Condo**

The elements of conversion are: (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's wrongful act or disposition of property rights; and (3) damages. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240 (conversion elements).)

Zheng admitted that he is liable to Plaintiff on the fifth cause of action for conversion of personal

property in the Condo. (*Id.*, RFA No. 37.)

**F.      Sixth Cause of Action — Conversion of Range Rover**

The same conversion elements apply to the Range Rover: Plaintiff's ownership or right to possession, Zheng's wrongful dominion or disposition, and resulting damages.

Zheng admitted that, in or around August 26, 2023, he purchased a 2020 Range Rover, VIN SALGS4RY3LA589657, for Plaintiff's use, with title in both Zheng's and Plaintiff's names. (Trial Exh. 1, RFA No. 43.) Zheng admitted that he told Plaintiff in text messages that he purchased the Range Rover for Plaintiff, that it was Plaintiff's car, and that Plaintiff did not need another car because the Range Rover was for him. (*Id.,* RFA No. 44.) Zheng admitted that, after Plaintiff ended the relationship, Zheng told Plaintiff that he could keep the Range Rover. (*Id.*, RFA No. 45.)

Zheng then admitted that he removed Plaintiff's name from title without Plaintiff's consent, including by fraudulently informing the DMV that Plaintiff was a qualifying family member when he was not. (*Id.* RFA Nos. 46-48.) Zheng admitted that the Range Rover had a fair market value of $62,000, that Plaintiff incurred approximately $2,200 in rental car costs, and that Plaintiff had to purchase a replacement vehicle in the approximate amount of $80,000. (*Id.* RFA Nos. 49-51.) Zheng admitted that he is liable to Plaintiff on the sixth cause of action for conversion of the Range Rover. (*Id.* RFA No. 52.)

**G.      Seventh Cause of Action — Invasion of Privacy**

California recognizes the tort of intrusion upon seclusion. The elements are: (1) intentional intrusion into a private place, conversation, or matter; and (2) in a manner highly offensive to a reasonable person. (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 231 (intrusion elements).) Civil Code section 1708.8 also imposes liability for physical or constructive invasion of privacy where a person attempts to capture or records visual images, sound recordings, or other impressions under circumstances in which the plaintiff had a reasonable expectation of privacy. (Civ. Code, § 1708.8, subds. (a), (b).)

Zheng admitted that Plaintiff slept in the master or primary bedroom of the Condo. (Trial Exh. 1, RFA No. 9.) Zheng admitted that he installed a functioning hidden spy camera behind the air-conditioning vent in that bedroom; that the camera was internet-connected and capable of livestreaming and recording video and voice; that he installed the camera without Plaintiff's knowledge or consent; that

he recorded Plaintiff without Plaintiff's knowledge or consent; and that he intended to invade Plaintiff's privacy and spy on his private moments. (*Id.*, RFA Nos. 10-14.) Zheng admitted that he is liable to Plaintiff on the seventh cause of action for invasion of privacy. (*Id.* RFA No. 17.)

**H.     Eighth Cause of Action — Intentional Infliction of Emotional Distress**

The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) intent to cause emotional distress, or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051 (IIED elements).)

Zheng admitted intentional-infliction liability on three independent theories. First, Zheng admitted that his installation of the hidden spy camera and recording of Plaintiff was conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, such that it should not be tolerated in a civilized society. (Trial Exh. 1, RFA No. 18.) Zheng admitted liability for intentional infliction of emotional distress due to invading Plaintiff's privacy with the spy camera. (*Id.*, RFA No. 19.)

Second, Zheng admitted that his eviction of Plaintiff was likewise outrageous and extreme, and that he is liable for intentional infliction of emotional distress due to denying Plaintiff access to the Condo without notice or compliance with eviction laws. (*Id.*, RFA Nos. 28-29.) Third, Zheng admitted that his conversion of Plaintiff's personal property was outrageous and extreme, and that he is liable for intentional infliction of emotional distress due to that conversion. (*Id.*, RFA Nos. 38-39.) Zheng also admitted that his conversion and disposal of the Range Rover so as to deprive Plaintiff of its use was outrageous and extreme, and that he is liable for intentional infliction of emotional distress due to converting the Range Rover. (*Id.*, RFA Nos. 53-54.) Finally, Zheng admitted that his conduct caused Plaintiff emotional-distress damages in the amount of $1 million. (*Id.*, RFA No. 73.)

**I.     Ninth Cause of Action — Claim and Delivery of Personal Property**

Claim and delivery is the statutory procedure for recovering possession of specific personal property. A plaintiff must show, among other things, that the plaintiff is entitled to possession of specifically described property, that the property is wrongfully detained by the defendant, the manner in which the defendant came into possession, and the property's value. (Code Civ. Proc., § 512.010, subd.

(b).)

Zheng admitted that he is liable to Plaintiff on the ninth cause of action for claim and delivery of Plaintiff's personal property. (*Id.*, RFA Nos. 32-34, 40.)

**J.      Tenth Cause of Action — Breach of Contract re Childcare**

The elements of breach of contract are: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 (contract elements).)

Zheng admitted that Plaintiff provided approximately 16 months of around-the-clock childcare for Zheng's son, including feeding him, transporting him to and from school and extracurricular activities, buying clothing, and paying medical, dental, and vision insurance. (Trial Exh. 1, RFA No. 57.) Zheng admitted that he agreed to compensate and reimburse Plaintiff for reasonable and necessary time and expenses incurred in caring for Zheng's son. (Trial Exh. 1, RFA No. 58.) M.M. will testify that he was never paid for the childcare services he provided nor reimbursed for the expenses incurred in the care of Zheng's son. Zheng admitted that he is liable to Plaintiff on the tenth cause of action for breach of contract re childcare. (Trial Exh. 1, RFA No. 59.)

**K.      Eleventh Cause of Action — Promissory Estoppel**

The elements of promissory estoppel are: (1) a clear and unambiguous promise; (2) reliance by the party to whom the promise was made; (3) reasonable and foreseeable reliance; and (4) injury caused by the reliance. (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310 (promissory estoppel elements).)

Zheng admitted liability for promissory estoppel re Range Rover because he promised and represented that he was purchasing the Range Rover for Plaintiff but then converted it without Plaintiff's knowledge or consent. (Trial Exh. 1, RFA No. 55.)

For childcare, Zheng admitted that Plaintiff provided approximately 16 months of around-the-clock childcare for Zheng's son and that Zheng agreed to compensate and reimburse Plaintiff for reasonable and necessary time and expenses. (Trial Exh. 1, RFA No s. 57-58.) Zheng admitted liability on the eleventh cause of action for promissory estoppel for failing to compensate Plaintiff for care of Zheng's son as agreed. (Trial Exh. 1, RFA No. 60.)

TAJIMA LLP
Los Angeles

Case No. 24STCV17698

11

**L.      Twelfth Cause of Action — Quantum Meruit**

Quantum meruit permits recovery for the reasonable value of services rendered when the defendant has received a benefit under circumstances making it unjust to retain the benefit without paying for it. (*Huskinson & Brown, LLP v. Wolf* (2004) 32 Cal.4th 453, 458 (quantum meruit).)

Zheng admitted that Plaintiff provided extensive childcare services for Zheng's son for approximately 16 months, including around-the-clock care, transportation, food, clothing, extracurricular support, and insurance expenses. (Trial Exh. 1, RFA No. 57.) Zheng admitted that he agreed to compensate and reimburse Plaintiff and that Zheng received the benefit of Plaintiff's care without compensating or reimbursing Plaintiff. (Trial Exh. 1, RFA Nos. 58, 61.) Zheng admitted that he is liable to Plaintiff on the twelfth cause of action for quantum meruit. (Trial Exh. 1, RFA No. 61.)

**M.      Thirteenth Cause of Action — Common Count: Goods and Services Rendered**

A common count for goods and services rendered requires that the defendant became indebted to the plaintiff for goods or services provided, and that the defendant has not paid the amount due. (*Farmers Insurance Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460 (common count elements); see also CACI No. 371.)

Zheng admitted the services and expenses Plaintiff provided for Zheng's son and admitted that he agreed to compensate and reimburse Plaintiff. (Trial Exh. 1, RFA No s. 57-58.) Zheng admitted that he is liable to Plaintiff on the thirteenth cause of action. (Trial Exh. 1, RFA No. 62.)

**N.      Fourteenth Cause of Action — Unfair Competition**

Business and Professions Code section 17200 defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice. Each prong provides an independent basis for liability, and the "unlawful" prong borrows violations of other laws and treats them as independently actionable under the UCL. (Bus. & Prof. Code, § 17200; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (UCL prongs).)

Zheng admitted unfair-competition liability on multiple grounds. He admitted liability because, as landlord, his invasion of Plaintiff's tenant privacy through the hidden spy camera constituted an unlawful, unfair, and/or fraudulent business practice. (Trial Exh. 1, RFA No. 20.) He admitted liability based on denying Plaintiff access to the Condo without notice or compliance with eviction laws. (Trial

Exh. 1, RFA No. 30.) He also admitted liability based on receiving Plaintiff's care of Zheng's son without compensation or reimbursement. (Trial Exh. 1, RFA No. 63.)

### O.    Fifteenth Cause of Action — Negligence

The elements of negligence are: (1) legal duty; (2) breach; (3) causation; and (4) damages. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 (negligence elements).)

Zheng admitted that he owed Plaintiff duties arising from the landlord-tenant relationship and from Plaintiff's personal property remaining in the Condo after the lockout. Zheng admitted that he denied Plaintiff access to the Condo without notice or compliance with eviction laws and disposed of Plaintiff's property. (Trial Exh. 1, RFA No s. 21-24, 32-34.) Zheng admitted that he is liable for negligence because he breached a duty of care to Plaintiff in denying him access to the Condo without notice or compliance with eviction laws, and because, after locking Plaintiff out, Zheng owed and breached a duty not to dispose of Plaintiff's personal property. (Trial Exh. 1, RFA Nos. 31, 42.)

### VI.    DAMAGES ESTABLISHED BY THE DEEMED ADMISSIONS

The deemed admissions establish not only Zheng's liability, but also the amount of compensatory damages. These amounts are admitted by Zheng and are therefore conclusively established under Code of Civil Procedure section 2033.410, subdivision (a).

### A.    Economic Damages

| Category | Amount | RFA Support |
|---|---|---|
| Personal property left in the Condo at the time of lockout | $20,000.00 | Zheng admitted that, when he locked M.M. out of the Condo, M.M. had $20,000 worth of personal property in the Condo. (Trial Exh. 1, RFA No 32.) |
| Range Rover fair market value | $62,000.00 | Zheng admitted that the Range Rover had a fair market value of $62,000. (Trial Exh. 1, RFA No 49.) |
| Rental car costs caused by conversion of Range Rover | ~$2,200.00 | Zheng admitted that, as a result of his conversion of the Range Rover, M.M. incurred approximately $2,200 in rental car costs. (Trial Exh. 1, RFA No 50.) |
| Replacement vehicle purchase caused by conversion of Range Rover | ~$80,000.00 | Zheng admitted that, as a result of his conversion of the Range Rover, M.M. had to purchase a |

| | | replacement vehicle in the approximate amount of $80,000. (Trial Exh. 1, RFA No. 51.) |
|---|---|---|
| Childcare wages | $662,226.00 | Zheng admitted that reasonable market value for childcare wages totaled $662,226. (Trial Exh. 1, RFA No. 64.) |
| Food for Zheng's son | $18,840.00 | Zheng admitted that food costs for his son totaled $18,840. (Trial Exh. 1, RFA No. 64.) |
| Clothing and incidentals for Zheng's son | $6,728.57 | Zheng admitted that clothing and incidentals for his son totaled $6,728.57. (Trial Exh. 1, RFA No 64.) |
| Entertainment for Zheng's son | $3,364.28 | Zheng admitted that entertainment costs for his son totaled $3,364.28. (Trial Exh. 1, RFA No 64.) |
| Travel for Zheng's son | $4,000.00 | Zheng admitted that travel costs for his son totaled $4,000. (Trial Exh. 1, RFA No 64.) |
| Health insurance for Zheng's son | $2,240.00 | Zheng admitted that health insurance costs for his son totaled $2,240. (Trial Exh. 1, RFA No. 64.) |
| **Total Economic Damages:** | **$861,598.85** | |

## B.    Noneconomic Damages

Zheng also admitted to the following non-economic damages: $1,000,000 in admitted emotional-distress damages based on RFA No. 73.

Accordingly, the total compensatory damages (economic + non-economic) is **$1,861,598.85.**

| Emotional distress damages caused by Zheng's conduct | $1,000,000.00 | Zheng admitted that his conduct caused M.M. emotional distress damages in the amount of $1 million. (Trial Exh. 1, RFA No. 73.) |
|---|---|---|

## C.    Prejudgment Interest

M.M. also seeks prejudgment interest on the admitted economic damages. California law allows prejudgment interest on damages that are certain or capable of being made certain, and the statutory rate

is 10% where no different rate applies. (Civ. Code, §§ 3287, subd. (a), 3289, subd. (b).) For purposes of this trial brief, M.M. uses May 1, 2024 (since self-help eviction was late April 2024), as the single accrual date for all admitted economic damages and calculates interest through the first day of trial, June 9, 2026. This is a conservative and simplified approach. Several categories of damages accrued earlier, including the earlier childcare services and expenses.

Using the statutory 10% simple prejudgment interest rate, the calculation is:

| Item | Calculation | Amount |
| --- | --- | --- |
| Admitted economic damages | — | $861,598.85 |
| Annual interest at 10% | $861,598.85 × 10% | $86,159.89 |
| Daily interest | $86,159.89 ÷ 365 | $236.05/day |
| Days from May 1, 2024 to June 9, 2026 | 769 days | — |
| Prejudgment interest through June 9, 2026 | $236.05 × 769 | $181,525.89 |
| **Total compensatory (economic + non-economic) damages plus prejudgment interest through June 9, 2026** | $1,861,598.85 + $181,525.89 | **$2,043,124.74** |

In addition, Zheng admitted that he is liable for attorneys' fees. (Trial Exh. 1, RFA No. 72.) The Court has also separately ordered Zheng to pay **$22,900** in discovery sanctions for spoliation, which Zheng has not paid.

Zheng has admitted each item above, and no evidentiary trial is required on those compensatory-damages amounts. The only remaining damages issue for trial is the amount of punitive damages necessary to punish and deter Zheng.

**D.     Punitive Damages**

Punitive damages are warranted and should be set at three times the admitted compensatory damages**.** Civil Code section 3294 authorizes punitive damages where the defendant has been guilty of oppression, fraud, or malice, proven by clear and convincing evidence. (Civ. Code, § 3294, subd. (a).) Here, Zheng has admitted that his conduct toward M.M. was oppressive, fraudulent, and malicious within the meaning of Civil Code section 3294. (Trial Exh. 1, RFA No. 70.) Zheng has also admitted that his

conduct warrants punitive damages under Civil Code section 3294. (Trial Exh. 1, RFA No.. 71.)

| Punitive damages component | Amount |
|---|---|
| Admitted compensatory damages | $1,861,598.85 |
| Requested punitive ratio | 3:1 |
| **Requested punitive damages** | **$5,584,796.55** |

A **3:1 punitive-to-compensatory ratio** is reasonable under California law and constitutional due process. California courts evaluate punitive damages by considering: (1) the reprehensibility of the defendant's conduct; (2) the relationship between the punitive award and the harm suffered; and (3) the amount necessary to punish the defendant and deter future misconduct in light of the defendant's financial condition. (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 712-719 (punitive factors); *Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1171-1189 (punitive ratios); *Adams v. Murakami* (1991) 54 Cal.3d 105, 110-112 (financial condition).)

The 3:1 ratio is also proportionate. The admitted compensatory damages are **$1,861,598.85**. A three-times punitive award equals **$5,584,796.55**. This ratio is well within the single-digit range generally recognized as constitutionally permissible and is supported by the intentional, privacy-invasive, retaliatory, and financially coercive nature of Zheng's conduct.

Finally, Zheng's wealth supports the need for a meaningful punitive award. A punitive award must be large enough to punish and deter the defendant before the Court, not merely symbolic. (*Adams v. Murakami* (1991) 54 Cal.3d 105, 110-112 (financial condition); *Simon*, supra, 35 Cal.4th at 1185-1186 (deterrence).) Zheng is a fabulously wealthy individual with significant assets around the world, including in Portugal and China. A nominal punitive award would not deter a defendant of Zheng's means.

| Damage | Total |
|---|---|
| Compensatory (economic + non-economic) | $1,861,598.85 |
| Prejudgment Interest | $181,525.89 |
| Punitive Damages | $5,584.796.55 |
| **TOTAL** | **$7,627,921.29** |

**$7,627,921.29**, exclusive of post-June 9, 2026 interest adjustments, costs, sanctions enforcement,

and any attorneys' fee proceedings. Prejudgment interest should be adjusted through the date of entry of the final order or judgment, so the total judgment amount will be higher.

### VII.   JUDGMENT SHOULD BE ENTERED FOR M.M. ON ZHENG'S CROSS-COMPLAINT

Zheng's cross-complaint should also be dismissed, and judgment should be entered for M.M. as cross-defendant, because the deemed admissions conclusively disprove the factual predicates of Zheng's cross-claims.

Zheng admitted that M.M. did not convert jewelry belonging to Zheng. (Trial Exh. 1, RFA No. 65.) Zheng admitted that M.M. did not wrongfully withhold Zheng's child's passport. (*Id.,* RFA No. 66.) Zheng admitted that at no time whatsoever was Zheng ever "forced to leave" his child with M.M. (*Id.,* RFA No. 67.) Zheng further admitted that he suffered no mental anguish, fear, shock, or other emotional distress as a result of any conduct by M.M., and suffered no physical distress as a result of any conduct by M.M. (*Id.,* RFA Nos. 68-69.)

The same deemed admissions that establish Zheng's liability on Plaintiff's Complaint also conclusively establish that Zheng's Cross-Complaint should be dismissed without jury trial.

### VIII.   CONCLUSION

The Association has settled out, and Zheng's deemed admissions have eliminated the need for a liability or compensatory damages trial. RFAs Nos. 1-73 conclusively establish the factual predicates, liability, and admitted compensatory damages on Plaintiff's Complaint; establish Zheng's oppression, fraud, malice, and punitive-damages exposure; and disprove the factual predicates of Zheng's Cross-Complaint. Zheng's spoliation of the Condo evidence, nonpayment of the Court-ordered **$22,900** discovery sanction, and the adverse evidentiary finding that he rendered evidence unavailable because it was unfavorable to him further confirm that a substantial punitive award is necessary.

M.M. respectfully requests that the Court: (1) enter judgment for M.M. on the Complaint as to liability and admitted damages; (2) dismiss Zheng's Cross-Complaint in its entirety and enter judgment for M.M. as Cross-Defendant; (3) award admitted compensatory damages of **$1,861,598.85**; (5) include prejudgment interest, adjusted through the date of entry of judgment or final order, so that the final interest amount will be higher than the June 9, 2026 calculation; (6) enforce the unpaid **$22,900** discovery sanction; and (7) award punitive damages at a **3:1 multiplier**, in the amount of **$5,584,796.55**,

as a reasonable and proportionate award necessary to punish Zheng and deter similar misconduct.

Dated: May 21, 2026                                    TAJIMA LLP

_Chase T. Tajima_
Chase T. Tajima
Attorneys for Plaintiff and Cross-Defendant
M.M.

Case No. 24STCV17698                                    18
PLAINTIFF/CROSS-DEFENDANT M.M.'S TRIAL BRIEF

## PROOF OF SERVICE

I am over the age of 18 and not a party to the within action. My business address is 4605 Lankershim Blvd., Suite 540, Los Angeles, California 91602.

*M.M. v. Hao Zheng, Hollywood and Vine Residences Association*
*Superior Court of California, Los Angeles County*

On May 21, 2026, I served the following document (s) described as:

**PLAINTIFF/CROSS-DEFENDANT M.M.'S TRIAL BRIEF.**

| | | |
|---|---|---|
| Jeff C. Hsu, Esq.<br>Natalie Z. Fournier, Esq.<br>**Murphy, Pearson, Bradley & Feeney, P.C.**<br>550 S. Hope St, Suite 2170<br>Los Angeles, CA 90071<br>213-327-3500<br>JHsu@MPBF.com<br>nfournier@mpbf.com<br>Deannea Jefferson-Legal Assistant for Natalie Z. Fournier<br>djefferson@mpbf.com<br>Brenda Renner-Legal Assistant for Jeff C. Hsu<br>brenner@mpbf.com<br><br>Attorneys for Defendant HOLLYWOOD<br>AND VINE RESIDENCES ASSN | Kim Schumann<br>Michelle L. Arevalo<br>**Schumann Arevalo LLP**<br>30 Corporate Park, Suite 100<br>Irvine, CA 92606<br>714-850-0210<br>schumann@scarlaw.us<br>ml.arevalo@scarlaw.us<br>Rachel DeSantis-Legal Assistant<br>desantis@scarlaw.us<br><br>Attorneys for Defendant HOLLYWOOD<br>AND VINE RESIDENCES ASSN | Hao Zheng<br>6250 Hollywood Blvd, Unit 4K<br>Los Angeles CA 90028<br>(last known address per CCP 1013(a) and Rule 3.1362 of Court)<br>1229385257@qq.com<br>(last known email address)<br><br>Hao Zheng<br>c/o Court Clerk for Dept. 19<br>Stanley Mosk Courthouse<br>111 N. Hill Street<br>Los Angeles, CA 90012<br><br>Defendant and Cross-Complainant |
| Zheng "Andy" Liu<br>andy.liu@aptumlaw.us<br>bjliuzheng@gmail.com<br>**Aptum Law**<br>1660 South Amphlett Blvd., Suite 315<br>San Mateo, CA 94402<br><br>Potential Attorney for Defendant and Cross-Complainant Hao Zheng | | |

Case No. 24STCV17698

1

PROOF OF SERVICE

Document(s) were served in the following manner:

☐     by depositing same in a sealed envelope in a U.S. Postal Service mailbox.

☒     by depositing same in a sealed envelope in a U.S. Postal Service mailbox maintained at the office complex of Tajima LLP. **(Hao Zheng only.)**

☐     by depositing same in a sealed envelope in a U.S. Postal Service mailbox at my residence.

☐     by handing same to a messenger courier service or registered process server for delivery by hand in accordance with the instructions provided to the messenger, courier service or registered process server on that same day.

☒     by emailing same to the addressee(s) listed above pursuant to the Code of Civil Procedure sections 1016.6(e), 1013(g) and/or California Rules of Court, Rule 2.251(c)(3).

☐     by agreement of the parties to accept service by email or electronic transmission, I caused the document(s) to be sent to the persons at the email address listed above through a court-approved electronic service provider, Clio.

☐     by depositing same in a sealed envelope and delivering it to an overnight delivery service with instructions to deliver to the addressee(s) above.

    I declare that I am employed in the office of a member of the Bar of the State of California at whose direction this service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed on May 21, 2026, at Los Angeles, California.

_____
Rosy Barboza